Filed Sept. 18, 1891.

---

No. 174.

## The Board of Commissioners of Sullivan County v. Sisson.

County.—*Negligence.*—*Failure to Keep Bridge in Repair.*—*Action for Injuries.* —In an action against a board of county commissioners to recover damages for injuries sustained by the plaintiff while crossing a bridge which the defendant had negligently permitted to remain out of repair, it appeared from the pleadings and the special finding of the court that the bridge, which was over a small stream, had been rebuilt, with bannisters, in the year 1881, by the trustees of the township; that in October, 1888, the plaintiff, with her husband, undertook to drive across the bridge in a buggy, the horse, which was reasonably safe and gentle, being driven by her husband in a careful manner; that when near the west end of the bridge the horse scared at a crooked log, extending from the corner of the bridge, which had been placed there by

the road supervisor to keep the earth from washing away; that the horse backed the buggy to the north side of the bridge, where there was no railing, and had not been since June, 1887, and the plaintiff, her husband, and the horse and buggy were precipitated to the creek below, the plaintiff receiving the injuries complained of, without negligence by her or her husband; that in May, 1888, two of the county commissioners had crossed over the bridge, but did not notice that the railing was off; that the accident and injuries occurred because of the horse being frightened and the absence of the railing.

*Held*, that the facts show a negligent breach of duty on the part of the defendant resulting in the injury to the plaintiff, and that the plaintiff was without fault.

*Held*, also, that the fright of the horse did not relieve the defendant from liability, as the injury would not have occurred but for the negligence of the defendant in failing to provide a proper railing for the bridge.

SAME.—*Negligence of Supervisor.*—The fault of the supervisor, if it were such, in placing the kind of log he did at the approach to the bridge ✿ was not a good defence, as the defendant's own negligence helped approximately to bring about the accident.

SAME.—*Proximate Cause.*—Where two causes combine to produce an injury, both of which causes are in their nature proximate, the one being a culpable defect in the bridge itself, and the other an occurrence for which neither party is responsible, the county is liable, provided the injury would not have been sustained but for such defect.

SAME.—*Repair of Bridges.*—*Duty of County Commissioners.*—*Township Trustees.* —The duty imposed by section 2892, R. S. 1881, upon county commissioners to keep bridges in repair is not removed by the act of April 13th, 1885 (Acts 1885, p. 202), making it the duty of township trustees to make repairs when the cost is less than seventy-five dollars.

From the Sullivan Circuit Court.

*J. T. Hays, J. T. Beasley* and *A. B. Williams,* for appellant.

*G. W. Buff* and *J. S. Bays,* for appellee.

NEW, C. J.—This was an action by the appellee against the appellant to recover damages for alleged negligence on the part of the appellant, in suffering a public bridge to become and remain out of repair, by reason of which the appellee, in driving over it, was injured, without fault or negligence on her part.

The appellant answered in four paragraphs, the first of

which was the general denial. The third paragraph of the answer was, upon demurrer, held to be bad, and exception taken. The reply was a general denial.

The cause was tried by the court, and upon the appellant's request, a special finding of facts was made, with statement of conclusions of law. To the conclusions of law the appellant excepted, and thereupon the court rendered judgment in favor of the appellee for $500.

The appellant has assigned as error:

*First.* The overruling of the demurrer to the complaint.

*Second.* The sustaining of the demurrer to the third paragraph of the answer.

*Third.* In the statement of the conclusions of law.

The facts, as they appear in the pleadings and special finding, so far as we deem it material to recite them, may be stated as follows:

As a part of a public highway in Sullivan county, there has been for over twenty-five years a bridge, twelve feet wide and twenty-three feet long, the approaches included, over a small stream known as the west fork of Mariah creek. The trustees of the township in which said bridge is situate rebuilt said bridge in the year 1881, at a cost of less than $50, and when so rebuilt it had bannisters on both sides. In October, 1888, the appellee, with her husband, undertook to drive over and across said bridge in a one-horse buggy, the horse, which was reasonably safe and gentle, being driven by her husband in a careful manner. When they had passed almost to the west end of the bridge, the horse scared at a crooked log which was about sixteen feet long, having upon it spots of yellow color, calculated to frighten a horse; said log extended west from the southwest corner of said bridge for the purpose of keeping the earth at the west end of the bridge from washing away. Said log had been placed there by the road supervisor in October, 1888. The horse, when he scared, shied towards the right, at the same time backing the buggy to the north edge of the bridge, where there was

no railing and had not been since June, 1887, and the appellee, her husband, the horse and buggy were precipitated into the creek below, and the appellee thereby injured in her head and other parts of the body, without fault or negligence by her or her husband. In May, 1888, Charles Scott and James Nash, who then and there, and at the time of the trial, were members of the board of commissioners of said county, crossed over said bridge but did not notice or observe that the railing was off on the north side. It was because of the horse being frightened, and the absence of a proper railing on the north side of the bridge, that said accident and injuries occurred. By reason of the injuries received by the appellee, she was damaged in the sum of $500.

Counsel for appellant contend that, upon the averments of the complaint, as, also, upon the facts specially found by the court, the appellee has no cause of action against the appellant.

The decisions of the Supreme Court have firmly settled the question of the liability of counties in this State for a negligent breach of duty respecting public bridges.

That counties are liable for negligence in constructing or maintaining bridges upon public highways is no longer an open question. *Board, etc.*, v. *Montgomery*, 109 Ind. 69, and many cases there cited; *Board, etc.*, v. *Pearson*, 120 Ind. 426; *Harris* v. *Board, etc.*, 121 Ind. 299; *Board, etc.*, v. *Washington Tp.*, 121 Ind. 379.

Counties are held liable under the rulings in this State for injuries resulting from defective bridges on public highways, because the statute expressly lays the duty of keeping bridges in repair upon the several boards of commissioners, and provides them with ample means for performing the duty. *Abbett* v. *Board, etc.*, 114 Ind. 61; *House* v. *Board, etc.*, 60 Ind. 580; *Board, etc.*, v. *Emmerson*, 95 Ind. 579; sections 2885, 2886, 2892, R. S. 1881.

It is the duty of county boards to repair, or cause to be repaired, bridges on the public highways of the county; and

they are under obligation to the public to exercise a reasonable degree of affirmative and active diligence to ascertain the condition of the public bridges of the county, and see to it that such bridges, and the approaches thereto, are kept in repair, and reasonably safe and fit for travel. *Board, etc.,* v. *Legg,* 110 Ind. 479.

The duty thus resting upon county boards extends to the approaches of bridges, and also to railings, when the same are needed to make a bridge reasonably safe for travel by those who exercise ordinary care. *Board, etc.,* v. *Deprez,* 87 Ind. 509.

The duty imposed by section 2892, R. S. 1881, upon county boards to keep bridges on public highways in repair, is not removed by the act of 1885. The provisions of that statute do not relieve the county from the duty of maintaining county bridges. The right of control is not in the township but in the county. *Board, etc.,* v. *Arnett,* 116 Ind. 438; *Board, etc.,* v. *Washington Tp., supra.*

So long as these decisions are adhered to, the third paragraph of the answer must be held to be bad.

We do not deem it necessary to recite the provisions of the act of 1885, nor to restate the sound reasoning of the Supreme Court in relation thereto.

Actionable negligence involves the breach of a legal duty. The question presented, therefore, is, do the facts declared by the complaint and the special finding, for we think they may both be considered together, sufficiently show that there was on the part of the appellant a negligent breach of duty which resulted in the injury to the appellee of which she complains?

We think it is sufficiently averred in the complaint, and established by the facts specially found, that the appellee was not guilty of contributory negligence.

Counsel for the appellant contend that the fright of the horse was one of the causes of the injury, and that, therefore, the appellee has no cause of action; that although neg-

ligent inattention on the part of the appellant to needed repairs in the bridge may have concurred with the fright of the horse to produce the injury, there can be no recovery by the appellee in this action; in other words, that the fright of the horse absolves the appellant from all liability for the injuries sustained by the appellee.

We have, after careful attention to the able argument of counsel, arrived at a different conclusion.

The appellant was bound to use ordinary care and reasonable diligence in maintaining the bridge; the appellee was entitled to such protection as that care and diligence would afford—nothing more and nothing less.

Counsel for the appellant have cited us to the case of *Board, etc.,* v. *Rickel,* 106 Ind. 501. That was a case where the horses became frightened at a plank standing upright in the bridge, and without entering upon the bridge at all, suddenly leaped backward and turned over the carriage, throwing the appellee upon the ground and injuring her. It will be found upon reading the opinion in that case, that much importance is attached to the fact that the bridge was not in actual use by the complaining party at the time of the injury. As we read that case, it can not be inferred from what is said that a bridge might not be so constructed or maintained by a county as to make it liable where the manner of construction or maintenance is such as is well calculated to frighten horses ordinarily roadworthy, and where, because of such fright, injury results to one who, without fault, was at the time in actual use of the bridge.

In the case at bar, from the facts found, the log at which the horse took fright is a part of the bridge, for it constituted a part of the approach to the west end thereof. *Driftwood, etc., T. P. Co.* v. *Board, etc.,* 72 Ind. 226; *Board, etc.,* v. *Deprez, supra.*

But even if it can be said, which we do not decide, that the appellant was not at fault as to the fright of the horse,

we do not think the court below erred in its statement of conclusions of law.

In our opinion the correct rule, as furnished by reason and sustained by the greater weight of authority, is, that where two causes combine to produce an injury, both of which causes are in their nature proximate, the one being a culpable defect in the bridge itself, and the other an occurrence for which neither party is responsible, the county is liable, provided the injury would not have been sustained but for such defect. *City of Atlanta* v. *Wilson,* 59 Ga. 544 ; *Wilson* v. *City of Atlanta,* 60 Ga. 473 ; *Ring* v. *City of Cohoes,* 77 N. Y. 83 ; *Ivory* v. *Town of Deerpark,* 116 N. Y. 476.

Where the injured party is guilty of contributory negligence he can have no relief; but this rule is based not so much upon considerations of what is just to the defendant as upon grounds of public policy, which require, in the interest of the whole community, that everyone should take such care of himself as can reasonably be expected of him.

The fault however of a third party—the supervisor, for example, if he was at fault because of the kind of log placed by him at the west end of the bridge—however much it may have contributed to the injury, is no defence for one whose negligence helped approximately to bring the accident about.

Thus, in Shearman and Redfield Negligence, section 10, it is said : " Negligence, however, may be the proximate cause of an injury of which it is not the sole or immediate cause. If the defendant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time."

In section 46 of the same work it is said : " The fact that the injury was caused by the joint negligence of the defend-

ant and a stranger is of course no defence ; and unless the person whose fault is relied upon by the defendant as an excuse, was subject to the direction of the plaintiff, his fault can not properly be charged upon the latter."

Again, in section 401 of the same work, we find it stated that, "As a general principle, the fact that an injury to a traveller on a highway was caused by the combined effect of the unsafe condition of the road and the negligence of a third person, is no defence to the party who is bound to keep the highway in repair."

We invite attention to the case of *Burrell Tp.* v. *Uncapher*, 117 Pa. St. 353, which is very much in point in the principle announced. In that case the plaintiffs, who were husband and wife, while driving along a country road undertook to pass an engine standing by the road-side, which frightened their horse, and they were thrown over an embankment on the opposite side of the road, which they alleged was left by the town authorities negligently without a protecting rail to prevent such mishap. We quote from the opinion as follows : " In our judgment, no question involving the distinction between proximate and remote cause arises in this case. The defendant owed a duty to the plaintiff as one of the public to keep a reasonably safe road at the place where the accident happened. If that was not done, the omission was an act of negligence on the part of the defendant, and if, in consequence of that negligence, an injury was sustained by the plaintiff, the defendant is responsible in damages to the plaintiff. It is no answer to this to say that some one else was also guilty of another act of negligence, in consequence of which the plaintiff's injury was suffered. If both the defendant and other parties were derelict, the plaintiff might proceed against either, though of course only one actual recovery of damages for the same injury could be permitted. Between the two alleged acts of negligence in the present case, there is no relation of proximity or remoteness, in the sense in which the law regards that subject, so as to postpone the

liability of one because of the liability of another, or because of the intervention of an intermediate agency." In the same case it is further said : " The immediately producing cause of the accident in the present case was the unguarded condition of the road-side at the place where the accident occurred. If that unguarded condition of the road-side was an act of negligence on the part of the defendant, it follows that the defendant is responsible." See, also, *Campbell* v. *City of Stillwater*, 32 Minn. 308 ; *Mott* v. *Hudson River R. R. Co.*, 8 Bosw. 345 ; *Peck* v. *Neil*, 3 McLean, 22 ; *Lockhart* v. *Lichtenthaler*, 46 Pa. St. 151 ; *Edwards* v. *Carr*, 13 Gray, 234.

The case made by the facts found is not that of an accident ascribable to some serious vice of the horse, nor injury resulting from a horse so much frightened as to be utterly uncontrollable, and, therefore, running or backing to the side of the bridge with such force that an ordinary railing would be of little or no avail. Nor is it to be likened to the case of a horse suddenly, from fright or sickness, reeling or falling, with such violence that its pressure and weight could not be successfully resisted by such railing as ordinary care and prudence would demand. Where a railing is required it should be such as would reasonably be expected to guard against, not extraordinary, but ordinary contingencies, or those which might be reasonably apprehended.

It is not unusual nor unnatural for horses upon bridges to shy or start, or even back—presumably from fright—and thereby at times be dangerously near to the side of the bridge, without fault on the part of the driver. This is so well known from common observation and experience that it can not be overlooked in considering whether in a given case the bridge should be supplied with a railing. What is usual or reasonably to be anticipated in such cases, should be provided against with ordinary care.

Whether it was negligence in the appellant to maintain a bridge at the place in question, without some kind of pro-

tection in the nature of a railing on the north side thereof, was the province of the court alone to determine.

The court found that if there had been a proper railing on the north side of the bridge; the injury would not have been received by the appellee. We think that this, with the other facts found, sufficiently shows that the bridge without such railing was defective and unsafe, and that in consequence thereof the appellee received the injuries of which she complains, without fault on her part.

The judgment is affirmed, with costs.

Filed Sept. 18, 1891.